UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND, ANNUITY
FUND, AND APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, TRUSTEES OF THE NEW YORK CITY
CARPENTERS RELIEF AND CHARITY FUND,
THE CARPENTER CONTRACTOR ALLIANCE OF
METROPOLITAN NEW YORK, AND THE NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS,

20-cv-02582 (JGK)

MEMORANDUM OPINION
AND ORDER

Petitioners,

- against -

GALT INSTALLATIONS, LLC,

Respondent

---

JOHN G. KOELTL, District Judge:

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; Trustees of the New York City Carpenters Relief and Charity Fund; the Carpenter Contractor Alliance of Metropolitan New York (the "Funds"); and the New York City District Council of Carpenters (the "Union") (together with the Funds, the "Petitioners"), have filed a petition to confirm an arbitration award (the "Petition"), pursuant to section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185. The award was rendered pursuant to a collective

bargaining agreement (the "CBA") involving the Union and Galt Installations, LLC (the "Respondent"). The Respondent has not opposed the Petition. For the reasons explained below, the Petitioner's Petition to confirm their arbitration award is **GRANTED**.

I.

The following uncontested facts are taken from the Petition and its supporting documents.

The Respondent is a business corporation, incorporated under the laws of the State of New Jersey, that maintains its principal place of business in New Jersey, and is engaged in the construction industry in the state of New York. Petition to Confirm Arbitral Award, ECF No. 1 ("Pet.") ¶ 8. At all relevant times, the Respondent was an "employer" within the meaning of section 3(5) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(5), and of section 501 of the LMRA, 29 U.S.C. § 142. Id. The Petitioners Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA, with their principal place of business in New York. Pet. ¶ 4. The Trustees are fiduciaries of the ERISA Funds within the meaning of section

3(21) of ERISA, 29 U.S.C. § 1002(21). Pet. ¶ 4. The Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), with its principal place of business in New York. Pet. ¶ 5. The Petitioner Carpenter Contractor Alliance of Metropolitan New York is a New York not-for-profit corporation. Pet. ¶ 6. The Union is a labor organization that represents employees in an industry affecting commerce within the meaning of section 501(1) of the LMRA, 29 U.S.C. § 142(1), and is the certified bargaining representative for certain employees of the Respondent. Pet. ¶ 7.

In 2012, the Respondent entered into an Independent Building Construction Agreement, with the Union. Pet. ¶ 9, Exs. A & B. The Respondent executed an Interim Compliance Agreement that extended the terms of the Independent Building Construction Agreement to the present. Pet. ¶ 10, Ex. C, Art. 1. Through Article V of the Interim Compliance Agreement, the Respondent consented to be bound to the terms of any successor agreement negotiated between the Union and relevant employer associations. Pet. ¶ 12, Ex. C, Art. V. As a member of the Association of Wall-Ceiling & Carpentry Industries of New York (the "Wall-Ceiling Association"), the Respondent agreed as part of the

3

Interim Compliance Agreement to be bound by future agreements between the Wall-Ceiling Association and the Union. Pet. ¶¶ 13-14, 16, Ex. D, Arts. I, V. The Union and Wall-Ceiling Association negotiated an agreement covering the period of July 11, 2011 through June 30, 2017 (the "2011-17 Wall-Ceiling Association Agreement") that included a provision ensuring its automatic renewal, absent notice of cancellation or a new agreement. Pet. ¶ 17, Ex. D, Art. XX. The Union and Wall-Ceiling Association negotiated a successor agreement, covering the period from July 1, 2017 through June 30, 2024 (the "2017-2024 Wall Ceiling Association Agreement"). Pet. ¶ 18, Ex. E. Under both the 2011-17 Wall Ceiling Association Agreement and the 2017-24 Wall Ceiling Association Agreement, the Respondent was required to make contributions to the Funds for all work within the relevant trade and geographic jurisdiction of the Union. Pet. Ex. D, Art. XVI; Pet. ¶ 19, Ex. E, Art. XVII. Under Article XVII of the 2017-2024 Wall Ceiling Association Agreement, the Respondent was required to provide its books and payroll records for purposes of an audit to ensure the required benefit fund contributions were made. Pet. ¶ 20, Ex. E, Art. XVII. Further, in relevant part, the successor agreement provides that if "any dispute or disagreement arise[s] between the parties hereto, or between the Union and any signatory Employer-member, concerning any claim arising from payments to the Fund of principal and/or

4

interest which is allegedly due, either party may seek arbitration of the dispute before" one of two specified arbitrators. Pet. ¶ 23, Ex. E, Art. XVII, § 11.[1]

The underlying dispute arose after the Petitioners' auditors conducted an audit of the Respondent, covering the period from July 1, 2015 through September 16, 2018. Pet. ¶ 26. The audit revealed that the Respondent had failed to remit contributions to the Funds, as required under both the 2011-17 Wall-Ceiling Association Agreement and the 2017-2024 Wall Ceiling Association Agreement, in the amount of $82,111.07. Pet. ¶ 27. The Respondent failed to remediate the findings of the audit, and the Petitioners initiated arbitration, before one of the two arbitrators designed by the 2017-2024 Wall Ceiling Association Agreement, Roger E. Maher. Pet. ¶¶ 28-29. The arbitrator mailed a Notice of Hearing to the Respondent by regular and certified mail. Pet. ¶ 29, Ex. G. Despite proof that the Respondent had sufficient notice of the arbitration, the Respondent did not appear for the proceedings and the arbitrator

---

[1] For such a dispute, the arbitrator, if an award were to be rendered for the benefit of a fund, is empowered to award "such interest, liquidated damages, and/or costs or as indicated in Section 10 as otherwise may be applicable under the Agreement and Declaration of Trust governing such Fund(s)." Pet. ¶ 24, Ex. E. Art. XVII, § 10(b). Section 10(a), as incorporated for purposes of arbitration by Section 10(b), provided that employers must pay "(1) the unpaid contributions; plus (2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus (3) an amount equal to the greater of --(a) the amount of the interest charges on the unpaid contributions as determined in (b) above, or (b) liquidated damages of 20% of the amount of the unpaid contributions; plus (4) reasonable attorney's fees and costs of the action; and (5) such other legal or equitable relief as the court deems appropriate." Pet. Ex. E, Art. XVII, § 10(a).

5

determined the Respondent was liable for a total of $123,687.47, including a delinquency assessment with interest, plus other associated costs. Pet. Ex. H.

The Respondent has failed to respond to this Court's Order dated August 13, 2020. See ECF No. 14. In accordance with that Order, the Petition in this case is thus unopposed.

II.

Section 301 of the LMRA grants federal courts jurisdiction over petitions brought to confirm labor arbitration awards. Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). Instead, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 713 (2d Cir. 1998) (quoting Misco, 484 U.S. at 38); Nat'l Football League Mgmt.

6

Council, 820 F.3d at 536. Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. United States Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

Because the Respondent has failed to respond, the Petition at issue here is unopposed. However, the Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to confirm or vacate an [arbitration] award is generally accompanied by a record . . . [and] the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also N.Y.C. Dist. Council of Carpenters v. Reilly Partitions, Inc., No. 18-cv-1211, 2018 WL 2417849, at *2 (S.D.N.Y. May 29, 2018).

III.

In this case, the arbitrator's award was not the arbitrator's "own brand of industrial justice." See Misco, 484 U.S. at 36 (quoting United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)). The arbitrator found that uncontroverted testimony and evidence established that the respondent was bound by a 2012 CBA with the Union, that the Petitioners' audit was allowed by the CBA, and that the Respondent was delinquent in making payments required under the CBA, and was obligated to pay a delinquency assessment and interest, plus other costs associated with the delinquency and with the arbitration. Pet. Ex. H at 2-3. The arbitrator determined that the Respondent is liable for a total of $123,687.47, consisting of $82,111.07 of principal plus interest, liquidated damages, and attorney's fees and other costs. Id. Based on the limited review that is appropriate of an unopposed petition to confirm an arbitration award, there is no genuine dispute of material fact and the arbitrator's award should be confirmed.

The Petitioners also request attorney's fees in the amount of $1,479 – for 8.3 hours of services rendered – and $70 for service fees in connection with pursuing this petition. See Pet. ¶¶ 42-43, Ex. I. Article XVII, § 10 of the 2017-24 Ceiling Wall Association Agreement provides for reasonable attorney's fees in the event that the Petitioners initiate, and obtain a favorable judgment in, court proceedings for delinquent contributions. Pet. Ex. E, Art. XVII, § 10(a). The Court has examined the submitted invoice and finds that the number of hours expended is reasonable and the invoice reflects "sound billing practices." Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. Metroplex Serv. Grp., Inc., No. 18-CV-5889, 2018 WL 4141034, at *6 (S.D.N.Y. Aug. 30, 2018).

However, 2.1 of the 8.3 hours were billed by a partner, Nicole Marion, and for these 2.1 hours, the Petitioners have requested $350 per hour rate for Ms. Marimon's work (for a total of $735). The rate is above the range of fees ordinarily awarded in for similar services in other cases. Indeed, "courts in this circuit have generally held that $300 is a reasonable rate for partners engaging the work done here." Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus.

9

Fund v. Shorecon-NY, Inc., No. 17-CV-5210, 2020 WL 3962127, at *5 (S.D.N.Y. July 13, 2020) (collecting cases). Accordingly, the Court will grant attorney's fees in the amount of $630 for Ms. Marimon's work, and thus grant the Petitioners total attorney's fees of $1374, plus $70 in costs.

Further, the Petitioners are also entitled to post-judgment interest on the full amount of the judgment at the rate provided under 28 U.S.C. § 1961(a). See Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.") (citing 28 U.S.C. § 1961(a)).

## CONCLUSION

For the reasons explained above, the Petition to confirm the arbitration award is **GRANTED** and the underlying arbitration award is ordered confirmed.

The Clerk is directed to enter Judgment confirming the arbitration award dated December 11, 2019, attached as Exhibit H to the Complaint, and to enter Judgment in favor of the Petitioners and against the Respondent, as follows: (1) Awarding Petitioners $123,687.47 pursuant to the December 11, 2019 arbitration award plus interest from the date of the award through to the date of Judgment to accrue at the annual rate of 7.5%; (2) Awarding Petitioners $70 in costs arising out of this

proceeding; and, (3) Awarding Petitioners $1,374 in attorney's fees arising out of this proceeding.

The Clerk is directed to enter Judgment accordingly and to close this case.

**SO ORDERED.**

Dated:   New York, New York
         October 26, 2020

_____
John G. Koeltl
United States District Judge